IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AILEEN FESSIA, *et al.*, | * | |
|     Plaintiffs, | * | |
| v. | * | Civ. No. DLB-25-1970 |
| HMSHOST CORPORATION, | * | |
|     Defendant. | * | |

**MEMORANDUM OPINION**

Five months after this negligence action was filed, and with the end of discovery nigh, the defendant HMSHost Corporation ("HMS") sought to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the U.S. District Court for the District of Hawaii, where the events giving rise to the claims occurred. Upon consideration of the § 1404(a) factors, the Court finds that HMS has not met its burden to show that the plaintiffs' chosen forum should be disturbed. The motion to transfer is denied.

**I.    Background**

HMS operates restaurants and provides food services at airports nationwide, including Kahului Airport in Maui, Hawaii. ECF 1, ¶ 7. Aileen and Daniel Fessia, Utah residents, visited Hawaii in July 2023 and traveled through Kahului Airport. *Id.* ¶¶ 1–2, 6. While making a purchase from an airport vending machine, Aileen Fessia was struck by a food services cart operated by HMS employee Baron Ladia. *Id.* ¶ 8. Ladia later said he had been unable to see Aileen Fessia because the cart was "stacked so full of goods that [his] view . . . was obstructed." *Id.* ¶ 9. An airport security officer, Brian West, prepared a report after the incident. ECF 18, ¶ 7; *see also* ECF 19-14 (Incident Report). As a result of being struck by the HMS-operated food services cart, Aileen Fessia has "suffered serious and permanent injuries," has "undergone multiple surgeries," and

"remains unable to work" due to the extent of her injuries. ECF 1, ¶ 10. Two months after the accident, in September 2023, the Fessias' counsel contacted Marvin Moniz, a Hawaiian Department of Transportation employee, to request any public records associated with the incident. ECF 18, ¶ 8; ECF 19-15 (Moniz response to public information act request).

On June 20, 2025, the Fessias filed this personal injury lawsuit in this district, asserting claims of negligence and loss of consortium. ECF 1, ¶¶ 10, 12. A month later, HMS answered. ECF 6. On August 27, 2025, after a Rule 16 conference with counsel, the Court issued a scheduling order, ECF 11, and referred this case to a magistrate judge for a settlement conference, ECF 12. While the parties engaged in discovery, they communicated with Magistrate Judge Gina L. Simms about scheduling a settlement conference. ECF 15, 16, 17.

Then, on November 17, while discovery was well underway and set to close in less than two months, HMS filed a motion to transfer this case to the U.S. District Court for the District of Hawaii. ECF 18. The Fessias opposed the motion, ECF 19, and HMS filed a reply, ECF 20. On December 11, the Court held a status conference to discuss the motion to transfer, the status of settlement talks, and the status of discovery. During the call, the parties indicated they might be willing to resume settlement negotiations. Then, on January 8, 2026, they jointly requested a 90-day extension of the discovery deadline to April 7, 2026, ECF 22, which the Court granted, ECF 26. In their January 8 status report, the parties stated they are waiting for the Court to rule on this motion to transfer before they retain additional experts. ECF 23, at 1 n.1. No hearing on the motion to transfer is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## II.  Standard of Review

HMS moves to transfer this case pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" A party requesting a change of venue under this statute "bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper." *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 132 (D. Md. 2024) (quoting *Kimber v. Plus3 IT Sys., LLC*, No. ELH-18-3046, 2019 WL 1518970, at *3 (D. Md. Apr. 5, 2019)). To meet its burden, the movant must rely on more than "[m]ere assertions of inconvenience or hardship" that it will suffer in the plaintiff's chosen forum. *Versus Evil LLC v. PNC Bank, Nat'l Ass'n*, 613 F. Supp. 3d 916, 923 (D. Md. 2020) (quoting *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009)). The movant may and should "submit affidavits from witnesses and parties involved that explain the inconvenience and hardship[.]" *Id.* (quoting *CoStar*, 604 F. Supp. 2d at 770).

In analyzing a motion to transfer under § 1404(a), the court first must satisfy itself that "the action could have been brought in the transferee district." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 777 (D. Md. 2009). The parties do not dispute that this action could have been brought in the District of Hawaii.

The court then considers four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Section 1404(a) "provides no guidance as to the weight" the court should give each of these factors. *D2L*, 671 F. Supp. 2d at 777–78 (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006)). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508

(1946)). Ultimately, "[t]he decision whether to transfer venue is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

### III. Analysis

The balance of the § 1404(a) factors do not favor transfer.

### A. Plaintiffs' Choice of Venue

"[P]laintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations)[.]" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 571 U.S. 49, 63 (2013). "[T]he [c]ourt ordinarily accords substantial weight to the plaintiff's choice of forum," but this deference "is lessened when the forum is not the plaintiff's home forum and when the complained-of conduct did not occur in that forum." *Bell v. CSX Transp., Inc.*, 758 F. Supp. 3d 390, 394 (D. Md. 2024).

The Fessias, residents of Utah, chose to file suit in the District of Maryland, where HMS has its principal place of business. The only other jurisdictions where they could have filed suit were the District of Hawaii, where the events occurred, and the District of Delaware, where HMS is incorporated. The Fessias understandably chose to file in this district because Maryland is closer to their home than Hawaii; this district is served by three major airports; and litigating in Maryland is less expensive than litigating in Hawaii. *See* ECF 19, at 3–4.

HMS argues that the plaintiffs' choice of venue is entitled to little weight because none of the negligent acts occurred in Maryland and "this case has no factual connection to the State of Maryland." ECF 18-1, at 5. HMS is correct. *See, e.g.*, *Manne v. Jaddou*, No. CV 21-1092 PJM, 2022 WL 102853, at *7 (D. Md. Jan. 11, 2022) (noting that, when "'none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection

4

with the matter in controversy,' deference is less appropriate" (quoting *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774–75 (D. Md. 2017))).

Because the complained of conduct did not occur in Maryland and the plaintiffs do not live in Maryland, their chosen forum is entitled to less deference. This factor is neutral.

### B. Convenience of Witnesses

HMS claims that "all of the crucial fact witnesses (Baron Ladia, Brian West, and Marvin Moniz) work and reside in the State of Hawaii." ECF 18-1, at 5. Yet HMS has not submitted any affidavits from these witnesses explaining the inconvenience or hardship; "[m]ere assertions of inconvenience" will not suffice. *See Versus Evil*, 613 F. Supp. 3d at 923. Moreover, not all of these witnesses are "crucial."

Baron Ladia, the HMS employee who was operating the cart that struck Aileen Fessia, is indeed a crucial fact witness. According to HMS, Ladia "continues to work and reside" in Hawaii. ECF 20, at 2. Nevertheless, the Fessias have agreed that Ladia's deposition may be conducted virtually, eliminating any purported inconvenience to Ladia during discovery. ECF 19, at 9. If this matter goes to trial and HMS does not stipulate to liability, Ladia may have to travel to Maryland to testify. The Court will not assume the travel will inconvenience Ladia because HMS has not submitted an affidavit from Ladia indicating how travel to Maryland would be inconvenient or a hardship.

Brian West, the airport security officer who prepared the incident report, may or may not live in Hawaii. HMS has not confirmed where West currently lives, nor has it submitted an affidavit from West. And West's importance to this case is debatable: He did not witness the accident, but he did take contemporaneous statements of Aileen Fessia and Ladia. As the Fessias see it, West is not a crucial witness because it is undisputed that Ladia struck Aileen Fessia with

the food services cart and that Ladia was acting within the scope of his employment with HMS. HMS does not explain why West is a crucial witness who would have to testify at trial.

Finally, Marvin Moniz, an employee with the Hawaiian Department of Transportation who responded to the Fessias' public records request two months after the accident, is not a crucial fact witness. It is unclear why Moniz would need to be deposed, let alone testify at trial. If the documents Moniz produced will be used at trial, the business records exception and a stipulation about the custodian of records will obviate the need for him to appear in person.

For their part, the Fessias identify three witnesses who would be inconvenienced if this case were transferred to Hawaii. Aileen Fessia's treating physician, who resides in Utah, is expected to testify about his treatment of her injuries stemming from the accident. Traveling to Maryland for trial is more convenient for him than traveling to Hawaii. *Compare* ECF 19-9, at 2 (flight time of 5 hours, 44 minutes from Las Vegas, Nevada to Honolulu, Hawaii), *with* ECF 19-10, at 2 (flight time of 3 hours, 58 minutes from Las Vegas, Nevada to Dulles International Airport). And the Fessias have retained two expert witnesses who live in Maryland.

Only one key fact witness—the HMS employee who struck Fessia with the cart—might arguably be inconvenienced by litigating this case in Maryland, whereas three other important witnesses—Aileen Fessia's treating physician and the Fessias' two retained experts—would be inconvenienced if this case were transferred to Hawaii. This factor weighs against transfer.

### C. Convenience of the Parties

The District of Maryland is extremely convenient for HMS whose principal place of business is in Maryland. And, for the Fessias, this district is more convenient than the District of Hawaii. The District of Utah would be even more convenient for them because they live there, but they could not file suit in their home state because the events did not occur in Utah and HMS

6

would not be subject to general or specific personal jurisdiction there. As a result, the Fessias chose to file suit in this district because Maryland is more convenient for them than Hawaii or Delaware.

Because litigating this case in the District of Maryland is more convenient for all parties, this factor weighs heavily against transfer.

### D. Interest of Justice

"[T]he interest of justice is a factor (albeit an amorphous and somewhat subjective one) to be considered on its own and . . . it is very important." 15 Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3854 (4th ed. Sept. 2025 update) ("Wright & Miller"). This factor "encompasses all relevant considerations apart from witness and party convenience." *Smellie v. Marriott Int'l, Inc.*, No. PX-23-2121, 2023 WL 7487183, at *4 (D. Md. Nov. 13, 2023). These considerations include "the local interest in having localized controversies decided at home," *Atl. City Assocs. No. Two (S-1), LLC v. Reale*, No. CCB-11-78, 2011 WL 1769842, at *3 (D. Md. May 9, 2011), and the relative familiarity of the transferor and transferee courts with the facts and claims at issue, *see Intell. Ventures I LLC v. Cap. One Fin. Corp.*, No. PWG-14-111, 2014 WL 979198, at *5–6 (D. Md. Mar. 12, 2014).

HMS's primary interest-of-justice argument is that "to the extent Plaintiffs contend that Hawaii substantive law applies to their claims, a judge from Hawaii would undoubtedly be more familiar with such law for purposes of properly applying it to various aspects of this lawsuit." ECF 18-1, at 6; *see also* ECF 20, at 7 ("[A] Hawaiian judge would be better situated to oversee a lawsuit in which Hawaiian law allegedly applies."). Whatever law governs the Fessias' negligence and loss of consortium claims—Hawaii or Maryland—this Court is certainly capable of applying it to this straightforward negligence case. No special experience with Hawaii tort law is necessary for this Maryland judge to fairly and ably preside over this case. And if HMS is correct that Maryland,

not Hawaii, law governs, then by HMS's own logic, this case should be overseen by a judge from Maryland, not Hawaii.

The interest of justice weighs against transfer for another reason: HMS's significant delay in requesting transfer. HMS filed its motion to transfer nearly five months after the complaint was filed and a mere seven weeks before the close of discovery. While there is no deadline by which a motion to transfer must be filed, transfer motions should be brought reasonably promptly after suit is filed. *See* 15 Wright & Miller § 3844. HMS knew at the outset of this case that the events took place in Hawaii and that some witnesses are in Hawaii. *See* ECF 1, ¶¶ 6–9, 14 (describing events occurring in Hawaii). Yet, HMS was content to litigate this case in its home forum for several months.[1] Why, then, did HMS file the motion to transfer so late? There are two apparent and related reasons: (1) HMS found the plaintiffs' settlement demand unreasonable and, in retaliation for the unreasonable demand, filed the motion to transfer five days later, *see* ECF 20-4, at 2 (November 12 email from HMS counsel referring to "Plaintiffs' eight-figure settlement demand" and advising that "it appears that Defendant will be seeking [ ] a transfer"); and (2) HMS is trying to strongarm the plaintiffs into stipulating that Maryland, not Hawaii, law applies (apparently because Hawaii law favors the plaintiffs and presumably drove the settlement demand), *see* ECF 18, at 2 n.1 (HMS offering to withdraw its transfer motion if "Plaintiffs will stipulate that Maryland substantive law applies to this matter"). Clearly, HMS is less concerned with *where* this case is litigated than it is with *which state's law* applies to the plaintiffs' claims. The Court will not countenance HMS's gamesmanship and dilatory tactics by granting its motion to transfer.

---

[1] To be sure, HMS's counsel emailed the Fessias' counsel on June 30, 2025, asking if counsel would be "amenable to transferring this lawsuit to the USDC for the District of Hawaii." ECF 19-13, at 3. Counsel said no. *Id.* at 2. HMS proceeded to litigate this case in Maryland.

HMS may object to the Court's findings of gamesmanship. Regardless of whether HMS's motion to transfer was a retributive litigation tactic, the fact remains that HMS knew at the beginning of this lawsuit that the events giving rise to the Fessias' claims occurred in Hawaii and that some of the witnesses are in Hawaii, yet it chose not to file the motion until five months after the case commenced. HMS has not justified the delay. HMS's calculated decision not to reasonably promptly seek a transfer is yet another reason why its bid to transfer this case to Hawaii is doomed.

The interest of justice factor weighs heavily against transfer.

## IV. Conclusion

Though this case could have been brought in the District of Hawaii, HMS has not met its burden to show that the balance of the § 1404(a) factors tips strongly enough in its favor to justify disturbing the plaintiffs' choice of forum. HMS's motion to transfer is denied. A separate Order follows.

Date: February 10, 2026

_____
Deborah L. Boardman
United States District Judge

9